Patrick Bertram Walker, #296176,    )    C/A No.: 1:09-2672-HMH-SVH
    )
        Petitioner,    )
    )
  vs.    )    REPORT AND RECOMMENDATION
    )
Warden of Broad River Correctional    )
Institution,    )
    )
        Respondent.    )

Petitioner Patrick Bertram Walker filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on Respondent's motion for summary judgment and return. [Entry #21, 22]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion. [Entry #25]. Petitioner filed a response in opposition to Respondent's motion. [Entry #28]. Having carefully considered the parties' submissions and the record in this case, the court finds that Respondent's motion for summary judgment should be granted.

I.    Factual and Procedural Background[1]

Petitioner was indicted in 2002 in Greenville County for murder (02-GS-23-5550). App. 892–93. The facts giving rise to charge of murder developed on March 21, 2002,

---

[1] In his opposition, Petitioner agreed with the statement of procedural history and facts in the Return, which provides the basis for the background as stated herein.

when Petitioner was served dinner by his girlfriend Earnetta King at her house. Also present for dinner were King's thirteen year old and five year old sons, and her nine year old daughter. King tasted the food and suspected that something had been added to it. She called Petitioner into the room and he immediately blamed the thirteen year old, who denied tainting the food. Nevertheless, Petitioner hit him on the head and over the course of hours, Petitioner and King brutally and savagely beat the victim. At the very least, he was hit with a belt, a mop handle, and a metal broom stick. The daughter saw Walker laughing, as he kicked and punched the victim in the head and stomach. The victim had been stripped of his clothes, as well. Walker pushed the young girl, as she tried to help her brother. App. 380–81.

The girl told police that she saw King hit the victim with the mop stick on the left side of his body. App. 442. The beating apparently continued into the early morning hours of March 22, 2002. Upon realizing that the victim was no longer breathing, King called 911 and told EMS that the victim had suffered a seizure. App. 85–87.

The victim was taken to the hospital with a weak pulse, but no other signs of life. App. 111. He was declared dead at approximately 2:15 a.m. He had a massive hematoma that covered half of his head. He also had abrasions, stabbed cuts and bruises on his ear, shoulder, arms, chest and buttocks. A bruise covered half of his back. App. 110–20. Further, the left side of his scalp was detached from the underlying bone. The victim died as the result of multiple blunt force injuries. App. 459–73.

Officer Paul Silvaggio, of the Greenville County Sheriff's Office, testified that he interviewed Petitioner and King in the early morning of Friday, March 22, 2002. Because Officer Silvaggio felt that the investigation was incomplete, he did not arrest them. Instead, he gave Petitioner and King specific instructions to go home and wait for him to call after the autopsy. Later that afternoon, he attempted to serve arrest warrants on the couple at their home. However, Petitioner and King were not there.

Officer Silvaggio therefore dispatched officers to other addresses related to the couple. The officers found the clothes Petitioner had been wearing early that morning at one residence. Officer Silvaggio then notified the fugitive squad, who took up the search the rest of the day Friday, Saturday and Sunday. However, they were unable to locate the couple. Petitioner and King turned themselves in on Monday, March 25, 2002. App. 204–20.

Richard H. Warder, Esquire, represented Petitioner at a jury trial on September 8–11, 2003, before the Honorable J. Mark Hayes. Petitioner was jointly tried with King. The jury convicted him of murder, and Judge Hayes sentenced him to life imprisonment.

Petitioner timely filed a notice of appeal. Susannah C. Ross, Esquire, represented him on appeal, in which he presented the following issue for review:

1.   Did the lower court err in allowing law enforcement to testify where they searched for Appellant before he turned himself in?

2.   Did the lower court err in denying appellant's motion for a severance?

3.   Did the lower court lack subject matter jurisdiction to try appellant's case?

App. 717. The South Carolina Court of Appeals affirmed Petitioner's conviction and sentence in a published opinion. *State v. Walker*, 623 S.E.2d 122 (S.C. App. 2005). App. 764–76. The Remittitur issued on December 14, 2005.

Petitioner filed a pro se Post-Conviction Relief ("PCR") Application (06-CP-23-3331) on May 22, 2006, alleging the following grounds for relief:

1. Ineffective assistance of trial counsel:

   a. Failure of counsel to preserve objections.

   b. Failure of counsel to raise appropriate legal issues.

   c. Failure of counsel to appropriately cross-examine witnesses and raise appropriate defenses.

App. 778–84.

An evidentiary hearing was held on Petitioner's PCR application, at which Petitioner testified and was represented by Kurt Tavernier, Esquire. The PCR court issued an Order of Dismissal on March 14, 2007, denying relief.

Petitioner timely appealed from the denial of PCR, and was represented by Assistant Appellate Defender Eleanor Duffy Cleary in the collateral appellate proceedings. Petitioner filed a Motion for Remand to Reconstruct the PCR Record on December 31, 2007, based upon his contention that the PCR hearing transcript was incomplete and contained a number of inaccuracies. The South Carolina Supreme Court filed an Order denying the motion on January 23, 2008. App. 890.

On February 22, 2008, Attorney Cleary filed a *Johnson* Petition for Writ of Certiorari on Petitioner's behalf, raising the following issue:

> Whether trial counsel was ineffective for failing to present evidence that petitioner did not attempt to evade the police but instead followed his counsel's advice and turned himself in on the first business day following the issuance of a warrant for his arrest and whether petitioner was prejudiced by his error because it enabled the solicitor to emphasize flight as evidence of guilt to the jury?

Petitioner submitted a pro se brief in which he raised the following issues:

1.  Did the trial Court lack subject matter jurisdiction due to a flaw in the indictment for murder?
2.  Was there a fatal variance between the proof at trial and the allegations alleged in the indictment?
3.  Did the trial Court lack subject matter jurisdiction due to a flaw in the indictment for murder?
4.  Was defense counsel ineffective in failing to object to the State's inflammatory and prejudicial opening argument?
5.  Did the introduction of prior inconsistent statements by the State's key witnesses violate the appellant's right[] to a fundamentally fair trial?
6.  Was defense counsel ineffective in making a stipulation to prior bad acts evidence and testimony?
7.  Was defense counsel ineffective in failing to object to co-counsel's pitting and vouching for State Witnesses?
8.  Was defense counsel ineffective in failing to object to co-counsel's bolstering of the case?
9.  Was defense counsel ineffective in failing to object to the State's pitting and vouching for the State's key Witnesses in closing argument?
10. Was defense counsel ineffective in failing to object to the State's bolstering of the case in closing argument?
11. Was defense counsel ineffective in failing to move to suppress contaminated evidence by police officers pursuant to the Fourth Amendment?
12. Was defense counsel ineffective in failing to object or take exception to the trial Court's unconstitutional and confusing malice charge to the jury?
13. Was defense counsel ineffective in failing to move to dismiss the charge due to a violation of the Speedy Trial Act?

Petitioner supplemented his brief with the following additional issue on or about April 23, 2008:

      14.     Was defense counsel ineffective in failing to investigate the State's witness B. [King's daughter] prior to trial?

Petitioner subsequently filed an Amended Petition for Writ of Certiorari on August 28, 2008, in which he raised the following issues:

      15.     Whether trial counsel was ineffective when he failed to counter the state's evidence of flight with his personal knowledge regarding the alleged flight?
      16.     Whether trial counsel was ineffective when he failed to file a motion prior to trial for severance and a separate trial?
      17.     Whether trial counsel was ineffective when he failed to contemporaneously object to comments made by king's counsel during closing argument?

The Supreme Court denied certiorari on July 9, 2009, and denied Petitioner's Petition for Rehearing.  The Remittitur issued on August 6, 2009.  This habeas petition followed.

II.    Discussion

    A.    Federal Habeas Issues

Petitioner raises the following issues in his federal petition for a writ of habeas corpus:

**Ground One:**    Did the South Carolina Supreme Court err in denying the motion for remand to reconstruct the PCR Record?

**Ground Two:**    Did the State Court of Appeals err in ruling there was no violation of the Speedy Trial Act?

**Ground Three:**    Did the Supreme Court err in ruling the trial court properly denied defense counsel's motion for severance?

**Ground Four:**      Did the Supreme Court err in ruling trial counsel was not ineffective?

**Supporting Facts:**      **Argument: Part One** (A) Defense counsel failed to object to the State's inflammatory and prejudicial opening argument; (B) Defense counsel failed to object to prior inconsistent statements by the State's key witnesses, [B.] and Earnetta King; (C) Defense counsel failed to object to the introduction of prior bad acts evidence and testimony by making a stipulation to its introduction; (D) Defense counsel failed to object to co-counsel's pitting and vouching for State Witnesses, and bolstering of the case; (E) Defense counsel failed to object to the State's pitting and vouching for the State's key Witnesses, and its bolstering of the case; (F) Defense counsel failed to object or take exception to the trial Court's unconstitutional and confusing malice charge to the jury; (G) Trial counsel was ineffective when he failed to counter the State's evidence of flight with His Personal Knowledge Regarding the Alleged Flight; (H) Trial counsel was ineffective when he failed to file a motion prior to trial for severance and a separate trial; (I) Trial counsel was ineffective when he failed to Contemporaneously object to comments made by King's counsel during closing argument.

**Argument: Part Two:** (A) Trial counsel was ineffective when he failed to raise legal issues and defenses; (B) Trial counsel was ineffective in failing to move to suppress contaminated evidence by police officers pursuant to the Fourth Amendment.

**Additional Amended Argument:**[2] (1) At trial the State alleged that there had been a Civil Court finding in July 1997 prior to trial of physical abuse and a[n] order of treatment issued. Defense counsel stipulated to it, without even reviewing a copy of the civil court records. Defense counsel failed to investigate that fact prior to trial and failed to obtain the civil court records in the Petitioner's behalf. *See*: Appendix A, pp. 1-39). (2) Defense counsel also failed to object or take exception to the trial judge's malice charge to the jury, even after the jury had requested the definition of malice, and failed to object or take exception to the judge's procedure in that regard. *See*:

---

[2] Per the February 18, 2010 Supplement to his Petition for Writ of Habeas Corpus [Entry # 19], Petitioner added these arguments, which more precisely amend Grounds Four (C) and (F).

Appendix B, pp. 1-2). Counsel was ineffective. **[3]** Defense counsel was further ineffective in not being forthright with the court in his personal knowledge in regard to the evidence of flight presented by the State at trial. Counsel plainly admitted to that fact. *See*: App., p. 807; App., p. 815, Ls. 6-12). *See* Appendix C, pp. 1-12). The [receipt] from the South Carolina Department of Probation, Parole, and Pardon Services dated Tuesday June 24, 2003 clearly confirms the fact that Petitioner reported upon that date and paid a $25.00 regular supervision fee. Defense counsel was ineffective in failing to call someone from his office to put up testimony against the State's evidence of flight presented at trial. **[4]** Defense counsel further failed to interview or investigate one of the State's Key witnesses at trial. [(B.)]. At the time of her brother's death, [B.] was nine years old. When she testified at trial she was eleven years old. Counsel plainly admitted that he did not interview or investigate the witness. *See*; PCR Order, pp. 4-5). In review and consideration of this fact; we must first note that [B.]'s testimony at the civil proceeding prior to trial of this case was extremely different from her story version at trial. Counsel failed to impeach [B.]'s testimony at that civil proceeding, but instead, stood by allowing parts of that very testimony to be heard by the jury at trial, when it should not have been as it was highly prejudicial. Had counsel taken an interest in the defense of his client by conducting a through investigation of the witness, he could have properly impeached [B.]'s testimony at trial. Counsel's complete failure to do so allowed inflammatory testimony at trial resulting in an unwarranted prejudice to his client at trial. Counsel was indeed ineffective at the most critical stage of any criminal trial. Defense counsel further failed to move the Court to strike any references, or to give curative instruction in regard to [B.]'s prior testimony at the civil proceeding, which could have very well allowed the jury to base their verdict upon that prior testimony and not the evidence introduced at . . . trial.

**Ground Five**: Did the State Court of Appeals err in ruling the trial Court had subject matter jurisdiction?

**Supporting Facts:** **Part A:** An indictment must enumerate all elements of the charged offense, regardless of whether it is a Statutory or Common Law offense. This is absolutely necessary in an indictment for murder in this State. *See*, *State v. Dudley*, WL 31747311(2002). It is elementary that every ingredient of the crime must be charged in the

indictment. A general reference to the provisions of the Statute is insufficient. It is well established that a failure to recite an essential element of the offense is not [amenable] to harmless error review. *See*: *U.S. v. Spruill*, 118 F. 3d 221 (4th Cir. 1997); *U.S. v. Hooker*, 841 F. 2d 1225, 1228 (4th Cir. 1988). . . . It is well established that S.C. Code Ann.§ 17-19-90 does not limit a Court's review of subject matter jurisdiction, no matter when the issue is raised. The issue was preserved for an Appellate Court review, as the petitioner did not challenge the sufficiency of the indictment. But, instead, challenged the essential elements of the indictment, as to the time and place of death of the victim and the manner in which the victim was killed. Therefore, Gentry did not apply to the [petitioner's] direct challenge to these elements. *Gentry, compare e.g. State V. Mitchell*, 1 SCL 267,1 Bay (1 S.C.L,) 267 (1792);*e.g. Ex Parte Cole V. State*, 154 N.C. App. 234,574 S.E. 2d 17 (N.C. App. 2002). Therefore, the South Carolina Court of Appeals erred in not ruling upon this issue.

**Part B:** The State in this case argued the Hand of One, Hand of All theory during trial and closing argument. (R.pp. 478, line 25-p. 479,line 6). The State requested the Hand of One be charged to the jury. (R.pp. 586, line 19-p. 588, line 7.p. 590,lines 5-23). The trial Court charged the jury upon the Hand of One, Hand of All theory twice. (R.pp. 680, line 5-p. 684, line 2;p. 685, lines 15-25). A very direct legal issue to be considered here now follows. The indictment in question, fails to allege a Hand of One, Hand of All allegation within its language or its face. It fails to allege "assisting, aiding, [abetting], or acting together. Furthermore; our South Carolina Supreme Court has held that in order to convict a person under the Hand of One, Hand of All theory, the defendant must first be charged with conspiracy in the indictment. The indictment in question here fails to allege a conspiracy. *See*: S.C. Code Ann.,Sect. 16-17-410 (1985); *State v. Leonard*, 355 S.E. 2d at 270; *U.S. v. Camps*, 32 F. 3d 102,105 (4th Cir. 1994). The State must not only prove a conspiracy to get a conviction, it must be alleged in the indictment. Being present at any crime doesn't make a person guilty, The key is to this type of theory or charge is " knowingly." *State v. Hicks*, 257 S.C. 279, 85 S.E.2d at 764; *State V. Coleman*,17 S.C. 473,1882 WL 5605 (1882); *State V. Blakenly*,11 S.E. 637 at 637-38; *State V. Platt*, 151 S.E. 206 at 211. The indictment stated did not properly apprise the petitioner of the offense intended to be charged. Thus, it is a matter of jurisprudence between the alleged challenge by

the petitioner as to the sufficiency of the indictment, and the subject matter jurisdiction of the trial Court, which the petitioner did direct [challenge]. *See*: *State v. Presier*,112 Ohio App. 437,176 N.E. 2d 308 (Ohio App. 1960): *State v. Bullock*, 842 So. 2d 605 (Ala. 2002): *State V. Halder*,13 S.C.L. 377, 2 Mc Cord (13 S.C.L, 377 (1823).

**Ground Six**: Would this District Court err in not granting petitioner's Motion For Summary Judgment?

**Supporting Facts:** This Ground Six is posed as a legal question and ground, as a matter of law and constitutional rights. It is based upon the prejudice suffered by petitioner as a pre-trial detainee, during the trial, [throughout] PCR and Appellate proceedings by the State, the Sixth Amendment right to effective assistance of counsel, both at trial and the PCR [proceedings]. Therefore, petitioner contends that it would be error for this District Court failing to grant his Motion For Summary Judgment.

**Ground Seven**: Was PCR counsel ineffective?

**Supporting Facts:** First, the District Court should note that petitioner's wife Ms. Sameera Walker gave her husband's pro-se PCR Brief with Application to his PCR attorney, Mr. Kurt Tavernier to be filed with the Clerk of Court for Greenville County. However; no where in the entire case file or records, can a filing of that pro-se Brief be found. Counsel failed to follow the rules and procedures of the PCR Act and State Law. *See*: Rule 71.1 (e), SCRCP and the Post-Conviction Relief Act. PCR counsel further advised petitioner to withdraw some of his PCR allegations, when those allegations had legal merit that might well have resulted in a favorable South Carolina Court of Appeals, or Supreme Court decision, had those issues at least been stated on the PCR transcript record to preserve them for an Appellate review; *See*: (PCR R.pp. 3, line 17-p. 4, line 10). Petitioner only had one bite at the apple as PCR Judge Nettles stated. *See*: (PCR R.pp.4, lines 2-4, p. 5, lines 11-13). Therefore, petitioner contends that PCR counsel was indeed ineffective, and that he was prejudiced by counsel's ineffectiveness. *See*: *Frasier v. State*, 351 S.C. at 385, 570 S.E.2d at 174; *Strickland*, 104 S. Ct. at 2052, Rule 71.1(e),SCRCP.

B.       Standard for Summary Judgment

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement

of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

### C. Habeas Corpus Standard of Review

#### 1. Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.      Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254 ("Section 2254"). This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.      Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

      (A)     the applicant has exhausted the remedies available in the courts of the State; or

      (B)     (i) there is an absence of available State corrective process; or

            (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so

will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State,* 653 S.E.2d 266 (S.C. 2007).[3] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, regardless of whether the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983)*; Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).

### b. Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default,[4] is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of

---

[3]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

[4]If a petitioner procedurally bypasses his state-court remedies, he is procedurally barred from raising them in federal court.

bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (*quoting Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a

petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (*citing Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### 3.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing

of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

D. Analysis

1. Procedurally-Barred Grounds

Procedural default is an affirmative defense which is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152,165–66 (1996). It is Petitioner's burden to raise cause and prejudice or actual innocence. If not raised by Petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir.1995).

Respondent contends that Petitioner has failed to properly exhaust all of his claims and that they are therefore procedurally-barred, except the following grounds which were raised on direct appeal or on certiorari: Ground One, Ground Three, Ground Four (D), (G), (H), (I), and Ground Five. The court agrees.

With regard to the remaining grounds (Ground Two; Ground Four (A), (B), (C)(as amended), (E), (F)(as amended), Ground Six, and Ground Seven), Petitioner did not properly exhaust these claims at the state level.

In Ground Two, Petitioner asserts that the court of appeals erred "in ruling there was no violation of the Speedy Trial Act." However, a review of the record reflects that Petitioner never raised a speedy trial act issue at trial or on direct appeal. While trial counsel filed a speedy trial act request based on state law, Petitioner did not appeal the

denial of the motion. Accordingly, the speedy trial act issue in Ground Two was not presented in Petitioner's direct appeal, and is not proper for habeas review. *See Joseph v. Angelone*, 184 F.3d 320, 328 (4th Cir.1999) ("In order to avoid procedural default [of a claim], the 'substance' of [the] claim must have been 'fairly presented' in state court.... That requires 'the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.") (*quoting Townes v. Murray*, 68 F.3d 840, 846 (4th Cir.1995) (*quoting Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir.1994)). In any event, these issues would not appear to have been proper claims to even raise as freestanding issues in an appeal from denial of PCR. *Drayton v. Evatt*, 430 S.E.2d 517, 519–520 (S.C.1992) (issues that could have been raised at trial or on direct appeal cannot be raised in a PCR application absent a claim of ineffective assistance of counsel).

In Ground Four (A), Petitioner alleges that trial counsel was ineffective for failing to object to the following portion of the State's inflammatory and prejudicial opening argument:

> You might be thinking to yourself right now, "how could anyone do that? I just don't want to believe that." It's not just on television. It's not just in the movies. It's here in Greenville County. It happens, and it did happen to [the victim].

App. 75:11–15. Petitioner failed to properly present evidence and pursue these issues in his PCR proceedings, even as part of his ineffective assistance of counsel claims. Therefore, because these issues were not addressed by the PCR judge in his order, they

are not considered exhausted for purposes of this federal petition. *Plyler v. State*, 424 S.E.2d 477, 478–80 (S.C.1992) (issue must be both raised to and ruled upon by PCR judge to be preserved for appellate review). Furthermore, Petitioner did not raise these claims on appeal in his Petition for Writ of Certiorari.

In Ground Four (B), Petitioner alleges that trial counsel was ineffective for failing to object to prior inconsistent statements made by the State's key witnesses, [B.] and King. Specifically, Petitioner alleges that child witness [B.] had changed her story as to what had occurred, and counsel should have interviewed the 11-year old (who was 9-years old when her 13-year old brother was killed). As in the prior ground, Petitioner failed to pursue this issue in his PCR proceedings and did not raise it on appeal, and it is therefore, procedurally defaulted.

In Ground Four (C) (Amended Ground Four (1)), Petitioner alleges that trial counsel was ineffective for not objecting to the introduction of prior bad acts evidence and testimony and by stipulating to the introduction of Petitioner's prior bad acts. The basis for this claim is that trial counsel had moved, in limine, to bar King's attorney from eliciting evidence of prior crimes by Petitioner. After argument, the trial judge permitted King to testify as to her reasons for fearing Petitioner. At the end of the State's case, an issue arose over the extent of testimony to be permitted regarding inconsistent statements by Petitioner and King regarding physical abuse of the victim. Petitioner's trial counsel thereafter argued in favor of a stipulation that it was alleged in 1997 that Petitioner allegedly hit the victim. The stipulation was accompanied by a limiting instruction by the

trial judge that it was given only for the purpose of assessing Petitioner's credibility. App. 424–35, 475. As in the prior grounds, Petitioner failed to pursue this issue in his PCR proceedings and did not raise it on appeal, and it is therefore, procedurally defaulted.

In Ground Four (E), Petitioner alleges that trial counsel was ineffective for failing to object to the State's pitting and vouching for the State's key witnesses, and its bolstering of the case. As in the prior grounds, Petitioner failed to pursue this issue in his PCR proceedings and did not raise it on appeal, and it is therefore, procedurally defaulted.

In Ground Four (F) (Amended Ground Four (2)), Petitioner alleges that trial counsel was ineffective for failing to object to the trial court's jury instruction regarding malice. As in the prior grounds, Petitioner failed to pursue this issue in his PCR proceedings and did not raise it on appeal, and it is therefore, procedurally defaulted.

Ground Six, although enumerated as a habeas ground, merely asserts that it would be error for this district court to not grant his motion for summary judgment. This is not a proper ground for habeas relief, and therefore it should be denied.

In Ground Seven, Petitioner contends that he received ineffective assistance of PCR counsel. Aside from failing to raise this issue at the state level and thereby being procedurally defaulted, this contention fails to state a cognizable claim for federal habeas relief, as no relief is available for a claim of ineffective assistance of collateral counsel. *See Aice v. State*, 409 S.E.2d 392 (S.C. 1991); 28 U.S.C. § 2254(I); *Longworth v. Ozmint*, 377 F.3d 437, 448 n.2 (4th. Cir. 2004); *Mackall v. Angelone*, 131 F.3d 442, 449 (4th Cir. 1997) (en banc).

Therefore, to the extent that the foregoing grounds were not fairly presented to the South Carolina appellate courts, they are procedurally-barred from federal habeas review absent a showing of cause and actual prejudice, or actual innocence. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997); *Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review).

The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or his efforts to comply with the State's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner fails to articulate cause for procedurally defaulting on his grounds. Petitioner had a direct appeal, a PCR hearing, and an appeal from the PCR in which to raise these issues and he failed to raise them, raise them properly, or preserve these issues for habeas review. Petitioner cannot establish cause and prejudice because he has consistently abandoned opportunities to preserve these specific issues.

In the alternative, Petitioner must show a miscarriage of justice. In order to demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Sclup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case

must be "truly extraordinary." *Id.* The court's review of the record does not support a showing of actual innocence.

After Petitioner and King suspected the thirteen-year old victim had tainted their dinner, they beat him to death with a belt, a metal handle broomstick, a wooden mop that had been broken in half, and a piece of wood that appeared to have come off of furniture. The victim's younger sister testified to having witnessed Petitioner beating the victim before he collapsed and EMS was called. The forensic evidence of the victim's injuries was overwhelming.

In light of all of the evidence presented at trial, Petitioner cannot show actual innocence. Because Petitioner cannot establish actual innocence, the procedural bar applies to Ground Two; Ground Four (A), (B), (C)(as amended), (E), (F)(as amended); Ground Six; and Ground Seven. Therefore, it is recommended that Respondent's motion for summary judgment be granted with respect to the issues raised thereunder.

As to the remaining claims in Ground One, Ground Three, Ground Four (D), (G), (H), (I), and Ground Five, Respondent also argues they are procedurally barred even though they were raised in Petitioner's *Johnson* petition or pro se brief that were denied by the South Carolina Supreme Court. Respondent argues that an issue raised and rejected on appeal by a *Johnson* brief or an *Anders*[5] brief is insufficient for exhaustion

---

[5] *Anders v. California*, 386 U.S. 738 (1967). *Anders* requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct

purposes because it "is not on the merits," *citing State v. Lyles*, 673 S.E.2d 811 (S.C. 2009). This argument has been consistently rejected by the judges of this court. This argument has been consistently rejected by the judges of this court. *See Goins v. Stevenson*, 08-3916-RBH, 2010 WL 922774 (D.S.C. March 9, 2010); *Mouzon v. Warden*, 09-2253-RBH, 2010 WL 1430464 (D.S.C. March 5, 2010); *Missouri v. Beckwith*, 08-2878-SB, 2009 WL 3233521 (D.S.C. Sept. 29, 2009); *Ehrhardt v. Cartledge*, 08-2266-CMC, 2009 WL 2366095 (D.S.C. July 30, 2009); *Singleton v. Eagleton*, 08-2539-RBH, 2009 WL 2252272 (D.S.C. July 28, 2009). Therefore, the court finds Petitioner has properly exhausted his claims in these grounds and addresses them on their merits below.

      2.    Merits Review of Ground One, Ground Three, Ground Four (D), (G), (H), (I), and Ground Five

      a.    Ground One

In Ground One, Petitioner alleges that the state supreme court erroneously denied his motion to remand the case to the PCR judge for a hearing to reconstruct the PCR Record. Respondent submits that this allegation fails to state a claim upon which federal habeas corpus relief may be granted because it involves supposed irregularities in the state PCR proceedings, and alternatively, that Petitioner's claim was denied upon an independent and adequate state law ground and the issue is, therefore, procedurally defaulted under *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991).

---

a full examination of the proceedings to determine if further review is merited. *Anders*, 386 U.S. at 744.

The record reflects that after Petitioner received a copy of his PCR transcript, he wrote a letter, through his wife, to the Clerk of Court in Greenville County, in which he requested the tape of the hearing and challenged the accuracy of the transcript. Rule 607(I), SCACR, requires court reporters maintain tapes for thirty days after transcription to allow "any party to challenge the accuracy of the transcription." Petitioner requested the tapes well before this deadline, but the court reporter misunderstood his request and destroyed the tapes. Based on the foregoing, Petitioner requested that the case be remanded for a reconstruction of the PCR hearing at which he could testify as to matters raised at his March 1, 2007, PCR hearing. Assistant Attorney General Karen C. Ratigan stated in a letter to the South Carolina Supreme Court that "I have since obtained my files from storage and have compared my notes from the hearing to the PCR transcript. My notes [track] what is reflected in the PCR transcript; as such, I do not believe this matter needs to be remanded to be reconstructed." App. 889. Ultimately, the state supreme court filed a letter Order summarily denying Petitioner's motion on January 23, 2008. App. 890.

After reviewing the record, the undersigned finds Ground One fails to state a cognizable claim because alleged defects in state post-conviction procedures are not cognizable in a federal habeas corpus action. *Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) (holding that errors and irregularities in connection with state post-conviction proceedings are not cognizable on federal habeas review); *see also Wright v. Angelone*, 151 F.3d 151, 159 (4th Cir. 1998) (rejecting claim as outside the scope of federal habeas

corpus relief, because " '[a] federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States[,] 28 U.S.C.A. § 2254(a)[,]" and petitioner was "not currently detained as a result of a decision of the Virginia Supreme Court in the state habeas action"). Here, Petitioner's claim of error regarding denial of remand to reconstruct the PCR hearing record provides no basis for habeas relief.  Petitioner is not currently detained as a result of the supreme court's decision to deny remand, and no cognizable habeas claim has been asserted. Therefore, Ground One should be dismissed.

3.     Ground Three and Ground Four(H)

In Ground Three, Petitioner maintains that the state court of appeals erroneously held that the trial judge properly denied trial counsel's motion for severance. The record reflects that Petitioner's codefendant King gave inconsistent statements about whether she, Petitioner, or both, hit the victim.  At trial, her counsel elicited information that Petitioner alone beat the victim, while she attempted to intervene and as a result, she received injuries. The State objected and Petitioner's trial counsel moved for severance. App. 239–41.  The trial judge ruled that the statement was inadmissible at that point in the trial because it implicated her co-defendant, and thereafter gave the jury a curative instruction to disregard the question and answer.  App.  253–55, 261:7–19.

On direct appeal, Petitioner argued that the trial judge abused his discretion because King's defense was antagonistic to his in that they blamed each other for the crime. The state court of appeals denied relief as follows:

> Walker argues the trial court abused its discretion in failing to sever his trial from that of Earnetta King. We find no error.
>
> Criminal defendants who are jointly tried for murder are not entitled to separate trials as a matter of right. *State v. Kelsey*, 331 S.C. 50, 502 S.E.2d 63 (1998); *State v. Nichols*, 325 S.C. 111, 481 S.E.2d 118 (1997); *see also State v. Garrett*, 350 S.C. 613, 567 S.E.2d 523 (Ct. App. 2002) (clarifying that codefendants are not entitled to separate trials as a matter of right). A motion for severance is addressed to the sound discretion of the trial court. *State v. Harris*, 351 S.C. 643, 572 S.E.2d 267 (2002); *State v. Tucker*, 324 S.C. 155, 478 S.E.2d 260 (1996); *State v. Simmons*, 352 S.C. 342, 573 S.E.2d 856 (Ct. App. 2002). The trial court's ruling will not be disturbed on appeal absent an abuse of that discretion. *Tucker*, 324 S.C. at 164, 478 S.E.2d at 265; *State v. Prince*, 316 S.C. 57, 447 S.E.2d 177 (1993); *Simmons*, 352 S.C. at 350, 573 S.E.2d at 860. An abuse of discretion occurs when a trial court's decision is unsupported by the evidence or controlled by an error of law. *State v. Lopez*, 352 S.C. 373, 574 S.E.2d 210 (Ct. App. 2002).
>
> There can be no clearly defined rule for determining when a defendant is entitled to a separate trial, because the exercise of discretion means that the decision must be based upon a just and proper consideration of the particular circumstances which are presented to the court in each case. *State v. McIntire*, 221 S.C. 504, 71 S.E.2d 410 (1952); *State v. Castineira*, 341 S.C. 619, 535 S.E.2d 449 (Ct. App.2000), *aff'd*, 351 S.C. 635, 572 S.E.2d 263 (2002). A severance should be granted only when there is a serious risk that a joint trial would compromise a specific trial right of a codefendant or prevent the jury from making a reliable judgment about a codefendant's guilt. *Harris*, 351 S.C. at 652-53, 572 S.E.2d at 273; *State v. Dennis*, 337 S.C. 275, 523 S.E.2d 173 (1999). An appellate court should not reverse a conviction achieved at a joint trial in the absence of a reasonable probability that the defendant would have obtained a more favorable result at a separate trial. *Hughes v. State*, 346 S.C. 554, 552 S.E.2d 315 (2001).

\* \* \*

Walker asserts he should have been granted a separate trial because of antagonistic defenses between himself and King. Each blames the other for the murder of [the victim]. These antagonistic defenses do not constitute the requisite prejudice. More importantly, the trial judge had discretion to determine whether Walker should have been granted a separate trial. Based on the evidence, the judge determined that separate trials were not needed. Walker is not entitled to a separate trial as a matter of right. We find no error in the trial judge's determination.

*Walker*, 623 S.E.2d at 128–29.

After reviewing the record, the court finds no merit to Ground Three. Because the trial court properly applied the law with respect to the issue of severance, and it was affirmed on appeal on that basis, Petitioner has failed to establish that the state court unreasonably applied federal law in addressing this claim. Likewise, Petitioner fails to show that either the trial court or the appellate court made an unreasonable determination of the facts in addressing the severance issue.

Furthermore, there was overwhelming eyewitness and circumstantial evidence of Petitioner's guilt, as outlined above. He cannot show prejudice in this regard because he cannot show that the outcome of the trial would have differed if he had been tried separately, with the victim's mother testifying against him as a State's witness as opposed to being tried as his codefendant. As a result, Petitioner fails to establish he is entitled to federal habeas relief upon this claim, and Ground Three should be dismissed.

Similarly, in Ground Four(H), Petitioner contends that trial counsel was ineffective when he failed to file a motion prior to trial for severance and a separate trial. To prevail on an ineffective assistance of counsel claim, Petitioner must show both (1) that his trial

counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1985). Petitioner bears the burden of proving an error and prejudice in his ineffective assistance of counsel claim. *Id.*

At PCR, trial counsel confirmed that he did not make a pre-trial motion to sever Petitioner's case from King's because his original strategy was to have a joint trial with the co-defendant in an attempt to try and shift blame to her. App. 810–811. He reiterated that it was a strategic decision to have a joint trial because, otherwise, the co-defendant would have been very damaging as a witness against Petitioner. Trial counsel admitted that he made a motion for severance at trial "when it started looking like the original strategy might not work completely." App. 808. In denying relief, the PCR judge found that Petitioner "failed to meet his burden of proving trial counsel should have made a pre-trial motion for severance." App. 842. The PCR judge found that trial counsel had articulated a valid (or objectively reasonable) strategic decision in choosing to have a joint trial with King. *Id.*

The court's review of the record shows no error by the PCR court or court of appeals on this issue. A joint trial lessened the impact that King would have as a prosecution witness and it gave counsel more flexibility in impeaching her. App. 808. Trial counsel was reasonable to want King sitting in the courtroom as a defendant on trial

for the murder of her own child, hoping to lessen any possible sympathy jurors might feel for her as the victim's mother.

For the same reasons as in Ground Three, Petitioner fails to show the state courts unreasonably applied federal law in addressing this claim or made an unreasonable determination of the facts in addressing it. Neither has Petitioner demonstrated a reasonable probability that he would have been acquitted if he had been tried separately from King.

4.    Ground Four (D) and (I)

In Grounds Four(D) and (I), Petitioner contends that counsel was ineffective for failing to object to co-counsel's pitting and vouching for the State's witnesses, bolstering of the case, and improper comment upon his character and his exercise of the right to remain silent. Specifically, Petitioner claims that King's closing argument was prejudicial because counsel noted an EMS worker described Petitioner as "big" and "intimidating." Petitioner contends that trial counsel should have objected to King's counsel's comment and that it was ineffective assistance of counsel for his failing to do so.

While the PCR court and appellate court did not specifically address this issue, the undersigned's review of the record shows that Petitioner's claim is without merit. Petitioner cannot establish that trial counsel was deficient in not objecting to the comment. The record reflects the EMS worker had described Petitioner as a "big man" and was "intimidating as far as his size." App. 86. This fair comment on the evidence at trial did not unfairly prejudice Petitioner, and there is not a reasonable probability of a

different result but for counsel's failure to object to the comment, as required to show prejudice under *Strickland*, 466 U.S. at 694.

Likewise, counsel did not object at trial to what he claimed on appeal were references to his decision not to testify. Petitioner is not entitled to relief based upon the closing argument of a prosecutor, unless that argument so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Donnelly, supra.* A review of the contested argument shows that King's counsel never commented on Petitioner's exercise of his right to remain silent. *See, e.g.*, App. 610, 614, 617, 628. Further, the trial judge instructed the jury that the arguments of trial counsel "are just that, it is arguments as to their view of the facts and the law. You remain the fact-finder in this case. And so if you have heard facts—or have not heard facts to which [counsel] have argued, then you are not to infer that those facts do exist that were argued by counsel. You are the fact-finder in this case." App. 672.

Again, while the PCR court and appellate court did not specifically address this issue, the undersigned's review of the record shows that Petitioner's claim is without merit. Petitioner cannot establish that trial counsel was deficient in not objecting as Petitioner claims he should have. When considering the propriety of a solicitor's closing argument, the trial court is vested with broad discretion, including the discretion to grant or deny the defendant's mistrial motion. *State v. Durden*, 212 S.E.2d 587 (S.C. 1975). To be entitled to a new trial for improper closing arguments, the test is whether "the Solicitor's comments so infected the trial with unfairness as to make the resulting

conviction a denial of due process." *State v. Hamilton*, 543 S.E.2d 586, 596 (S.C. App. 2001). Petitioner cannot establish that the solicitor's closing argument so infected his trial with unfairness as to make the resulting conviction a denial of due process. The court finds that the state courts' rejection of Petitioner's claim was not contrary to, and did not involve, an unreasonable application of clearly established United States Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1). The court recommends that this ground be dismissed.

5. Ground Four (G) (Ground Four [3] in Amended Memorandum)

In Ground Four (G) (Ground Four [3] in Amended Memorandum), Petitioner asserts that trial counsel was ineffective because he failed to counter the State's evidence of flight with his personal knowledge of Petitioner's alleged flight. Investigator Silvaggio testified at trial that both Petitioner and King gave statements after the victim had been taken to the hospital on Friday, March 22, 2002. Silvaggio further testified that neither person was arrested and that they were free to leave. App. 211. After the autopsy was performed that morning, Officer Silvaggio obtained arrest warrants for both Petitioner and King. App. 214. Even though he had told them to wait at home until after the autopsy, Officer Silvaggio testified that no one was home when he arrived with the warrants. App. 215–16.

Trial counsel objected on the ground of relevancy, App. 216, and after a sidebar conference, Officer Silvaggio testified that he had notified the fugitive squad, but that Petitioner and King, accompanied by trial counsel's investigator, turned themselves in on

Monday, March 25, 2002. App. 219–20. Upon being cross-examined by King's counsel, however, Silvaggio admitted that when Petitioner and King left the police station, they were free to go anywhere they liked, without any restrictions. App. 236. Further, although Officer Silvaggio had given them an instruction that he would be contacting them at their house, they were not required to be at any specific place. App. 237.

At the PCR hearing, Petitioner argued that he told trial counsel on Friday, March 22 that there was a warrant for his arrest. Petitioner testified that trial counsel told him to wait until Monday, and that they would go together to turn him in to authorities. Petitioner claims that trial counsel could have argued against the evidence of Petitioner's flight and cured it by offering that Petitioner was following his advice. App. 798–99.

Trial counsel disputed that Petitioner had informed him there was a warrant issued, and that he advised Petitioner to wait until Monday to turn himself in to police. Rather, counsel testified that he and Petitioner had discussed the case and that they agreed that they would "take care of whatever legal problems that he had" on Monday because trial counsel would be out of town that weekend. Counsel testified that he did not know that a warrant had been issued. App. 806–07, 814. Also, counsel testified that Officer Silvaggio's statements regarding flight were not significant, and that Petitioner's waiting until the next business day to surrender to police was not a major issue at trial. App. 814–15.

In denying relief, the PCR judge found that "[a]pplicant's testimony is not credible, while also finding trial counsel's testimony is credible." App. 840. He then

found that Petitioner had "failed to meet his burden of proving trial counsel should have better argued against the State's use of flight as evidence of the Applicant's guilt." App. 841. The PCR judge further found that:

> the issue of flight is a legitimate question of fact from which both parties may argue. It was brought out at trial that [Petitioner] did turn himself in on the Monday after the victim['s] death on Friday. This Court finds that, upon examination of the trial transcript, the handling of this issue was not determinative of the outcome of the case.

App. 841.

The court's review of the record shows that Petitioner is not entitled to habeas relief. Counsel objected to the State's effort to elicit evidence of flight, but his objection was overruled, consistent with well-settled South Carolina law. *See Al-Amin and Pagan, supra; Thompson, supra* (finding that evidence of flight was admissible to show guilty knowledge, intent, and that defendant sought to avoid apprehension); *Walker*, 623 S.E.2d at 128; *Beckham,* 513 S.E.2d at 612.

The PCR court's findings and credibility determinations are entitled to a presumption of correctness, which Petitioner must rebut by clear and convincing evidence. § 2254(e)(1). Petitioner cannot meet his burden of showing the court unreasonably applied federal law in addressing this claim or made an unreasonable determination of the facts in addressing it. Trial counsel testified that he was unaware that an arrest warrant had been issued, and his account of what he told Petitioner differs markedly from Petitioner's version. *See* App. 806–807, 814. Counsel's account supports the finding that his performance was not deficient.

Further, Petitioner cannot demonstrate prejudice. Even if counsel had presented the evidence that Petitioner waited to turn himself in on Monday on the advice of counsel, it would have merely created a factual dispute as to a collateral matter and it would not have created a reasonable probability of a different result under *Strickland* in light of the overwhelming evidence of Petitioner's guilt. Therefore, the undersigned recommends the court dismiss this ground.

      6.    Ground Five

In Ground Five, Petitioner raises two subject matter jurisdiction claims in conjunction with alleged defects in the murder indictment. In Ground Five (Part A), Petitioner maintains that the murder indictment failed to confer subject matter jurisdiction for failing to comply with S.C. Code Ann. § 17-19-30 (1985) because it omitted the words "willfully" and "feloniously." In Ground Five (Part B), Petitioner contends that the indictment was defective because the State proceeded on a theory of accomplice liability not alleged in the indictment. Respondent submits that neither allegation states a claim upon which federal habeas relief can be granted because the supposed violations in each claim are purely of state law, as opposed to the Constitution or treaties of the United States.

While the PCR court and appellate court did not specifically address this issue, the undersigned's review of the record shows that Petitioner's claims in Ground Five are without merit. Petitioner cannot show that the murder indictment was insufficient to provide him notice of the charge against him. "An indictment phrased substantially in the

language of the statute which creates and defines the offense is ordinarily sufficient."
*State v. Williams*, 552 S.E.2d 54, 58 (S.C. App. 2001).

An indictment is sufficient if the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, and the defendant to know what he is called upon to answer and whether he may plead an acquittal or conviction thereon. The true test of the sufficiency of an indictment is not whether it could be made more definite and certain, but whether it contains the necessary elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet. *Browning v. State*, 465 S.E.2d 358, 359 (S.C. 1995) (citations omitted)(*overruled in part on other grounds by State v. Gentry*, 610 S.E.2d 494 (S.C. 2005).

The indictment clearly provided Petitioner with sufficient notice of the murder charge he faced. Because the indictment provided Petitioner with sufficient notice, counsel would not have had a reason to move to quash the indictment. As a result, Petitioner cannot establish that counsel was deficient in not moving to quash the indictment, or that he was prejudiced because such a motion would not have been successful. Petitioner has not established that the state court unreasonably applied federal law or made an unreasonable determination of the facts in addressing this claim. As a result, Ground Five should be dismissed.

III.    Conclusion

For the foregoing reasons, the court recommends that Respondent's motion for summary judgment [Entry ## 21, 22] be granted.

IT IS SO RECOMMENDED.

Shiva V. Hodges

August 2, 2010                                Shiva V. Hodges
Florence, South Carolina                      United States Magistrate Judge


**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**